UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Donald Lallaman,

Plaintiff,

vs.

Thomas Werner, John Riches, II,
Timothy O'Dell, and
Corrections Corporation of America,

Defendants.

Civil File No. 00-2679 DSD/FLN

**REPORT AND RECOMMENDATION**

---

Plaintiff, Pro Se.
Thomas Backer Heffelfinger, Robert M. Lewis and Marlene A. Petersen for Defendants.

---

**THIS MATTER** is before the Court on Defendants' Motion for Dismissal and Summary Judgment [#11] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, and Plaintiff's Motion for a Restraining Order [#9]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. As discussed below, the Court finds that Defendants' motion must be granted and Plaintiff's Motion denied.

## I. BACKGROUND

Plaintiff Donald Lallaman ("Lallaman") is an inmate at the Prairie Correctional Facility ("PCF") in Appleton, Minnesota. (See Pl.'s Compl.) PCF is a private prison, operated by contract by the Corrections Corporation of America ("CCA"). (Id.) Lallaman seeks relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional right to the free exercise of religion. (Id.) Lallaman brings suit against CCA and its employees, Chaplain Thomas Werner



FILED 8-31-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

("Werner"),[1] Warden R. T. O'Dell ("O'Dell"), and staff attorney, John Riches, II ("Riches"). (Id.)

Lallaman is a dedicated member of Wicca; a pre-Christian, earth-centered religion. (See Pl.'s Compl., Aff. of Lallaman.) Wicca is recognized as a formal religion by the Eighth Circuit. See Smith v. Hundley, 190 F.3d 852, 854, n.4 (8th Cir. 1999). The practice of Wicca is permitted at PCF. (See Def.'s Mem. in Supp. of Mot. to Dismiss and/or Summ. J. ("Def.'s Supp. Mem.")).

In July 2000, Lallaman obtained pre-approval from Werner to order "The Little Giant Encyclopedia of Spells and Magic." (See Def.'s Supp. Mem., Aff. of Werner.) Delivery of the publication to Lallaman was contingent upon Werner's review and approval of the material in accordance with PCF Policies 16-1 and 20-105. (Id.) Policy 16-1.5.H.2 states that publications may be approved unless deemed to constitute an immediate and tangible threat to the security and order of the facility. (Id., Ex. A.) Additionally, Policy 20-105.5.B.2.d provides that the practice of a ritual or ceremony may be restricted or prohibited if it is not consistent with sound security practices. (Id., Ex. B.)

On August 8, 2000, Werner reviewed the publication and concluded it was not suitable for a prison environment due to security concerns. (See Def.'s Supp. Mem., Aff. of Werner.) Specifically, Werner determined the publication's references to blood and death spells promoted the practice of "Black Magic," a form of Satanism. (Id.) Because the book promoted the practice of Black Magic, the entire publication was found offensive to PCF's safety and security. (See Def.'s Supp. Mem., Aff. of O'Dell.)

---

[1] Chaplain Werner is erroneously referred to as "Warner" in Plaintiff's complaint.

Lallaman brought an offender grievance, alleging that Werner violated his First Amendment rights by withholding the book. (See Pl.'s Compl., Aff. of Lallaman.) The grievance was ultimately denied on the grounds that Werner's rejection of the material was consistent with security practices and was rationally related to a legitimate penological interest.[2] (Id., Ex. 1.) With that ruling, Lallaman exhausted all available administrative remedies. (Id.)

Lallaman thereafter filed a motion under 42 U.S.C. § 1983, contending that Defendants conspired to violate his rights under the First and Fourteenth amendments. (See Pl.'s Compl.) Lallaman seeks compensatory damages of $50,000 from each defendant, punitive damages of $50,000 from each defendant, return of all protected materials, and payment of fees and costs for this action. (Id.)

Defendants bring this motion for dismissal and summary judgment on the grounds that Lallaman failed to state a claim for which relief may be granted. (See Def.'s Mot. to Dismiss and/or Summ. J.) Defendants seek dismissal with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on Lallaman's request for punitive damages, stating that he has failed to allege facts that would warrant the imposition of punitive damages under any circumstance. (Id.) Defendants move for summary judgment under Fed. R. Civ. P. 56 on Lallaman's remaining claims, stating: (1) his constitutional rights, given his status as an incarcerated person, have not been impinged; (2) the policy of withholding one book from a prisoner is reasonably related to a legitimate penological

---

[2] The following chronology demonstrates Lallaman's progression through the tri-level grievance process: (1) Lallaman filed a Step I Grievance on August 22, 2000, which was determined on September 14, 2000; (2) Lallaman filed a Step II Grievance on September 21, 2000, which was determined on September 28, 2000; (3) Lallaman filed a Step III Grievance on November 8, 2000, which was determined on November 14, 2000. (Addendum, page 8). Attached to the Step I Grievance response were copies of those pages in the book to which Werner objected.

interest; (3) defendants acted in good faith and are protected by that defense; (4) a conspiracy allegation cannot exist without a violation of 42 U.S.C. § 1983; and, in the alternative (5) there is no conspiracy as a matter of law because Defendants are considered one entity. (See Def.'s Mot. to Dismiss and/or Summ. J.)

## II. DISCUSSION

### A. Dismissal

#### I. Standard of Review

In the case of a defendant's 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court is limited to considering the allegations of the complaint, must take those allegations as true, and must view the complaint in the light most favorable to the plaintiff. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Ring v. First Interstate Mfg., Inc., 984 F.2d 924 (8th Cir. 1993). Only facts alleged in a complaint and material attached to the complaint, which form part of the pleadings, are properly considered in a motion to dismiss. See County of St. Charles, Missouri v. Missouri Family Health Council, 107 F.3d 682, 684 n.3 (8th Cir. 1997).

A court should not dismiss a complaint unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. A motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the facts of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).

A court should afford a pro se litigant the benefit of the doubt in construing his or her pleadings and factual averments. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292

(1976); Malek v. Camp, 822 F.2d 812 (8th Cir. 1987). Although a pro se complaint is to be liberally construed, pro se plaintiffs must meet the same standards as litigants represented by counsel to survive a motion to dismiss. See Johnson v. Stark, 717 F.2d 1550, 1552 (8th Cir. 1983). Pro se pleadings cannot simply state conclusions; they must set forth facts that state a claim as a matter of law. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. Plaintiff Fails to State A Claim For Punitive Damages Under § 1983

Lallaman seeks $50,000 in punitive damages from each defendant. (See Pl.'s Compl.) Punitive damages may be assessed under § 1983 when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the constitutional rights of others. See Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992); citing Smith v. Wade, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983).

Even assuming facts in the light most favorable to the plaintiff, Lallaman has failed to set forth any set of facts which, if true, support a finding that Defendants' conduct was motivated by evil motive or intent. Werner's decision to withhold the book was based on sound security practices as articulated in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987) (inmate-to-inmate correspondence rule prohibiting correspondence between institutions was reasonably related to legitimate security concerns of prison officials, so as not to be facially invalid; prison regulations which impinge on an inmate's constitutional rights are valid if reasonably related to a legitimate penological interest.) Lallaman was given good faith reasons for the rejection of his book in response to his grievance. He has failed to allege facts which would support a finding of evil intent or motive. As such, his claim for punitive damages under § 1983 must be dismissed.

**B. Summary Judgment**

**I. Standard of Review**

A motion for summary judgment will be granted when there are no genuine issues of any material fact, and the case may be decided on purely legal grounds. See Fed. R. Civ. P. 56(c); AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). To be material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

The moving party bears the initial burden of stating grounds for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, which demonstrate the lack of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). It is incumbent on the non-moving party to make a showing on every essential element of the case on which he or she bears the burden of proof by setting forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Smith v. Tandy, 897 F.2d 355, 356 (8th Cir. 1990), cert. denied, 498 U.S. 865 (1990). The same benefits of liberal construction accorded to pro se litigants facing motions to dismiss accrue in motions for summary judgment. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976); Malek v. Camp, 822 F.2d 812 (8th Cir. 1987).

**II. Plaintiff Fails to Set Forth Material Facts Supporting A Claim for Violation of His Constitutional Rights**

Lallaman alleges Defendants violated his First Amendment right to freedom of religion by withholding pre-approved religious materials. (See Pl.'s Compl.) It is well established that prisoners retain the right to the free exercise of religion. See Salaam v. Lockhart, 905 F.2d 1168,

1170 (8th Cir. 1990); citing Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987). However, incarceration, while it does not deprive prisoners of the protection of the federal Constitution, does result in restrictions and limitations being placed on a prisoner's constitutional rights. See Murray v. Dosal, 150 F.3d 814, 819 (8th Cir. 1998); citing Mahers v. Halford, 768 F.3d 951, 954 (8th Cir. 1996).

In determining whether an inmate's right to freedom of religion was violated, the courts apply a reasonableness standard. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404 (1987); quoting Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259 (1987). A prison regulation that infringes on an inmate's constitutional rights is valid if it is "reasonably related to a legitimate penological interest." (Id.) Security is a valid penological objective for purposes of a constitutional challenge to a prison regulation. See, e.g., Herlein v. Higgins, 172 F.3d 1089, 1090 (8th Cir. 1999) (prison ban on possession of cassettes with labels warning of explicit lyrics did not violate First Amendment; ban was reasonably related to legitimate penological interest of maintaining prison security); citing O'Lone, 482 U.S. at 342, 107 S.Ct. at 2400.

Lallaman believes the security concerns surrounding the book are merely pretextual, and claims that Werner withheld the book because he personally disagrees with Lallaman's religious beliefs. (See Pl.'s Compl., Aff. of Lallaman.) Lallaman supports this contention by indicating that during the grievance process, PCF forwarded to him the objectionable pages, while withholding the balance of the book. (Id.). Further, the four objectionable pages comprise the only reference to blood or death spells in the entire publication. (Id.)

The analytical framework for determining whether a prison official's decision is reasonably related to a legitimate penological interest turns on the following factors: (1) whether the regulation is rationally related to a legitimate, neutral objective; (2) whether there are alternative means for exercising the constitutional right at issue; (3) the impact that accommodation of the asserted constitutional right will have on others in the prison; and (4) whether obvious, easy alternatives exist to the response taken by the prison official. See Turner, 482 U.S. at 89-91, 107 S.Ct. at 2261-2263.

CCA's resident mail policy is reasonably related to a legitimate, neutral objective, unrelated to the suppression of Lallaman's constitutional rights. CCA's policy states that "there shall be no limitation as to...the length, language, content or source of mail, except where there is clear and convincing evidence to justify the limitations for reasons of public safety or facility order and security." (See Def.'s Supp. Mot., Aff. of Werner, Ex. A.) The Supreme Court has consistently held that protecting prison security is "central to all other corrections goals." See Thornburgh v. Abbott, 490 U.S. 401, 415, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989).

The Eighth Circuit heard a similar complaint in Holloway v. Pigman, 884 F.2d 365 (8th Cir. 1989), where inmates filed a § 1983 claim against the prison chaplain and various prison officials for alleged mishandling of inmate mail. The district court granted summary judgment for defendants, and plaintiffs appealed, arguing that there was a genuine issue of material fact as to whether procedural safeguards were lacking in the prison mail system. See Holloway, 884 F.2d at 366. The Court of Appeals affirmed the lower court's decision, holding that the prison officials' actions were reasonably related to legitimate penological interests and did not violate the inmates' constitutional rights, absent evidence that prison administrators drew distinctions between

incoming mail based on anything other than implications for prison security. See Holloway, 884 F.2d at 367; see also Weiler v. Purkett, 137 F.3d 1047 (8th Cir. 1998) (inmate's First Amendment right to receive mail was not violated by prison authorities in response to security concerns.)

CCA's decision to withhold the publication was likewise based on a legitimate, neutral objective. Lallaman fails to set forth any material fact to suggest that Defendants improperly distinguished "The Little Giant Encyclopedia of Spells and Magic" from other incoming mail on any basis other than prison safety and security. Lallaman's book was specifically rejected due to security concerns.

As to the second factor, the Court finds that there are alternative means for Lallaman to exercise his constitutional right to the free exercise of religion. CCA recognizes Wicca as a formal religion, and Lallaman is free to practice Wicca at PCF. Further, denying Lallaman one publication does not reach the level of a constitutional violation. Defendants point out that although they withheld the Encyclopedia, they did not object to the balance of the shipment. (See Def.'s Supp. Mem.); see also Butler-Bey v. Frey, 811 F.2d 449, 452 (8th Cir. 1987) (denial of access for scheduled religious meeting in prison school on single occasion did not rise to level of constitutional violation where decision was based on legitimate concern over lack of security).

As to the third factor, Defendants have properly weighed the impact that accommodation of Lallaman's right could have on others in the prison. Defendants contend that rejection of the book was predicated on a valid security concern over the blood and death spells delineated therein. (See Def.'s Supp. Mot.) To support their contention, Defendants refer to historical events where persons prone to superstition have been victimized by Black Magic, including an incident where an individual cast a death spell on two others, who later murdered the originator of

the spell in order to break its power. (Id., Aff. of Werner.) In O'Dell's experience, the practice of Black Magic in a correctional facility can lead to apprehension, fear and tension among the inmates, leading to psychological trauma or violence. (Id., Aff. of O'Dell.)

Lastly, there are no obvious, easy alternatives to the response taken by Defendants. The existence of such alternatives may be evidence that the regulation is not reasonable, but is, as Lallaman contends here, an "exaggerated response" to prison concerns. See Thornburgh, 490 U.S. at 418, 109 S. Ct. at 1884. If an inmate can point to an alternative that fully accommodates the prisoner's rights at a de minimis cost to valid penological interests, the court may consider this evidence that the regulation does not satisfy the reasonable relationship standard. See Turner, 482 U.S. at 90-91, 107 S.Ct. at 2262. However, Lallaman fails to suggest any alternatives to PCF's rejection of this publication.

## III. Plaintiff Fails to Set Forth Material Facts Supporting A Claim for Conspiracy

Lallaman also alleges claims under 42 U.S.C. §§ 1985 and 1986 for conspiracy to deprive him, a member of a religious minority, of his civil rights. (See Pl's Compl. Add.) However, he fails to set forth any specific facts that support the conspiracy charge.

It is established in the Eighth Circuit that a corporation, its employees and agents are a single person in the eyes of the law, and a corporation cannot therefore conspire with itself. See Cross v. General Motors, Corp., 721 F.2d 1152, 1156 (8th Cir. 1983). An exception exists where the plaintiff establishes that the employees acted outside the scope of their employment or for personal reasons. (Id.) However, Lallaman has failed to set forth any set of facts which, if true, would establish that any of the defendants acted outside of the scope of their employment or acted

for their own benefit. Accordingly, this claim should be rejected.

### IV. Plaintiff's Motion for a Restraining Order [#9]

Lallaman has moved the Court to restrain Defendants from retaliating against him or harassing him based on his religious beliefs. (See Pl.'s Mot. for Restraining Order.) Plaintiff has not, however, alleged any basis for a retaliation or a harassment claim other than the previously discussed withholding of selected pages from "The Little Giant Encyclopedia of Spells and Magic." Given that the basis for Lallaman's claim is Defendants' decision to withhold the Encyclopedia from him, and given that the Court has determined that those claims are without merit, Plaintiff's Motion for a Restraining Order must be denied as moot.

## III. CONCLUSION

For the reasons discussed above, the Court finds that Defendants are entitled to dismissal and summary judgment on all claims. Lallaman has failed to state a claim that Defendants acted with evil motive or intent, or with reckless or callous indifference, to his constitutional rights. Lallaman's claim for punitive damages is therefore dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Lallaman also fails to set forth any material facts to support his allegation that Defendants violated his constitutional rights. PCF's rejection of the book was reasonably related to a legitimate penological interest, as articulated by the Supreme Court in Turner v. Safly. Because the Court finds that Lallaman's constitutional rights were not violated, summary judgment on the conspiracy charge is also proper.

## IV. RECOMMENDATION

Based upon the above, and upon all files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Dismissal [#11] as it pertains to Plaintiff's demand for punitive damages be **GRANTED**;

2. Defendant's Motion for Summary Judgment [#11] as it pertains to Plaintiff's remaining claims be **GRANTED**.

4. Plaintiff's Motion for a Restraining Order [#9] be **DENIED AS MOOT.**

DATED: August 31, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.